IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| | : | |
| v. | : | Case No.  DKC-18-066 |
| | : | |
| **DONALD MARCELL RIVERS, JR.,** | : | |
| | : | |
| **Defendant** | : | |

## MOTION TO SUPPRESS EVIDENCE
## SEIZED UNLAWFULLY ON AUGUST 29, 2017

Donald Rivers, Jr., by and through his undersigned counsel, Katherine Tang Newberger, Senior Litigation Counsel, hereby moves this Honorable Court to bar use in this federal case of any evidence seized unlawfully on August 29, 2017, and any evidence derived therefrom. Although the incident on August 29, 2017, and the evidence derived therefrom, have nothing to do with the charges alleged in the superseding indictment, the Government has indicated it may use evidence derived from the August 29, 2017, arrest to argue for an upward variance at sentencing. The evidence, principally three cell phones, were seized on August 29, 2017, in violation of the Fourth Amendment. Therefore, the cell phones and any evidence derived therefrom should be excluded for all purposes, including sentencing, in this unrelated federal case.

### PROCEDURAL AND FACTUAL HISTORY

Mr. Rivers, along with Timothy Michael McLain and Ashley Nicole Collier, is charged in counts 1 through 3 of the superseding indictment with conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a); armed bank robbery, in violation of 18 U.S.C. § 2113(a); and brandishing a firearm during the bank robbery, in violation of 18 U.S.C. § 924(c). All three charges

1

arise from the robbery of a BB&T Bank on January 9, 2018.  Count 4 alleges that on January 9, 2018, Mr. Rivers and Ms. Collier possessed a loaded firearm after having been convicted of committing a crime punishable by more than one-year incarceration, in violation of 18 U.S.C. § 922(g)(1).  Count 5 charges Mr. Rivers alone with possessing ammunition on November 6, 2017, in violation of 18 U.S.C. § 922(g)(1).  By separate motion, the Defendant moves to sever count 5 from counts 1 through 4.  The Defendant has also filed a motion to sever defendants.

The Government has indicated that at sentencing it may make allegations of wrongdoing against Mr. Rivers that are separate and unrelated to the conduct charged in the superseding indictment.  The Government has not informed counsel of what additional misconduct it may allege at the time of sentencing nor provided discovery about that additional misconduct.[1]  However, from references made by Washington County Sheriff's officers who interviewed Mr. Rivers, Mr. McLain and Ms. Collier after their arrest on January 9, undersigned counsel suspects the Government intends to rely upon evidence seized from Mr. Rivers during a traffic stop on August 29, 2017, and evidence derived therefrom.  Undersigned counsel has obtained from the Washington County Sheriff's Office ("WCSO") reports of the stop, arrest and seizure of property that occurred on August 29, 2017, and it is upon those independently obtained reports that we rely.

On or about August 29, 2017, law enforcement officers with the WCSO stopped Mr. Rivers for a purported seat-belt violation.  More specifically, Agent Teets from the WSCO Narcotics Task Force ("NTF") allegedly observed Mr. Rivers operating a motor vehicle without a seatbelt.  Because Agent Teets was in an unmarked police vehicle without emergency lights at the time, Agent Teets reported his alleged observations over the radio and requested that a uniformed officer in a marked

---

[1] Undersigned counsel has asked the Government to provide notice of what conduct it might allege at sentencing and discovery supporting those accusations.  As of the filing of this motion, the Government has been unwilling to disclose this information to the Defense.

patrol car initiate the traffic stop. Shortly thereafter, WCSO Officer Almy responded to Agent Teets' request and located Mr. Rivers' vehicle parked. Officer Almy parked behind Mr. Rivers and activated his emergency lights. The report states that Mr. Rivers exited his vehicle and fled the scene on foot. Officer Almy reported the encounter over the radio and asked for assistance. A few minutes later, NTF Agent Mills located and apprehended Mr. Rivers a few blocks away. Deputy Bauknecht arrived, took custody of Mr. Rivers, and conducted a search of his person. Deputy Bauknecht seized three cell phones, including two Alcatel cell phones and an iPhone 7+, $1,020.00 in currency and various other items from Mr. Rivers.

At the request of Agent Teets, Officer Almy had a drug-detection K9 conduct a sniff of the exterior of the vehicle Mr. Rivers had been driving. The K9 purportedly alerted to the vehicle, but the officers did not find any contraband when they searched the vehicle. Nonetheless, they towed the vehicle, even though it was parked legally on the street in front of the home of an acquaintance of Mr. Rivers. Although the reports we have obtained indicate that on October 11, 2017, the WCSO issued a release of the vehicle to Mr. Rivers' mother, she has not been able to retrieve the vehicle because of the exorbitant towing and storage fees assessed on it.

Interestingly, the WCSO's reports we have received indicate that only one cell phone was seized—a single Alcatel phone from Mr. Rivers. But from the line of questioning by the WCSO officers on January 9, 2018, it seems clear that they had searched a phone seized from Mr. Rivers on August 29, 2017, and it was not the Alcatel phone. Indeed, the WCSO took three phones from Mr. Rivers on August 29, 2017, and it is curious that two of the three phones illegally seized and searched by the WCSO were not listed in the police reports.

Ultimately, WCSO issued Mr. Rivers citations for operating a motor vehicle without a seatbelt, driving with a suspended license, driving without a license, attempting to elude police on foot and

3

attempting to elude a police vehicle on foot.  On January 30, 2018, Mr. Rivers pled guilty to driving without a license, and received 60 days all suspended in Washington County Circuit Court Case No. C-21-CR-17-000011.

Although the August 29, 2017, arrest resulted only in traffic charges and a conviction for driving without a license, the WCSO confiscated the $1,020 taken from Mr. Rivers' pockets on August 29, 2017, and submitted the cell phones as evidence.  The WCSO has directed inquiries by family and attorneys about the phones and money to the U.S. Attorney's Office, but counsel for the Government has not been willing to share—when asked by undersigned—what is the basis on which the cell phones are being held as evidence.

## **ARGUMENT**

Police can search an individual without a warrant if that search is incident to the individual's arrest.  However, the search incident to arrest exception to the Fourth Amendment's warrant requirement does not permit the permanent seizure of items that do not pose a risk to officer safety, do not constitute contraband, and are not evidence of the conduct that forms the basis for probable cause to arrest.  *See generally Riley v. California*, 134 S. Ct. 2473 (2014); *Arizona v. Gant*, 556 U.S. 332 (2009); *Anderson v. Maryland*, 427 U.S. 463 (1976); *United States v. Robinson*, 414 U.S. 218 (1973); *Chimel v. California*, 395 U.S. 752 (1969).  Because the cell phones taken from Mr. Rivers were not contraband, did not constitute evidence of the traffic violations he was charged with committing and did not pose a danger to officer safety, the seizure of the phones as evidence violated the Fourth Amendment.  Accordingly, neither the cell phones nor any evidence derived from information obtained from those cell phones, can be used at sentencing in this case.

**I.     The Seizure of Cell Phones from Mr. Rivers Violated the Fourth Amendment.**

A widely recognized exception to the Fourth Amendment's warrant requirement for searches and seizures applies when an officer conducts a search incident to a lawful arrest. *Riley v. California*, 134 S. Ct. 2473, 2482 (2014). The search incident to arrest exception permits arresting officers to search "the arrestee's person and the area 'within his immediate control'" and to seize any weapons that pose a risk to officer safety or any evidence found to "prevent its concealment or destruction." *Chimel v. California*, 395 U.S. 752, 762–63 (1969).

The police can search an arrestee's vehicle incident to his arrest, but only if it is reasonable to believe that evidence of the crime of arrest might be found therein. *Arizona v. Gant*, 556 U.S. 332 (2009). If the police "could not reasonably" believe that "evidence of the offense for which [the defendant] was arrested might be found therein," the search is unreasonable. *Gant*, 556 U.S. at 344 (finding search of arrestee's vehicle following arrest for driving with a suspended license was unreasonable where the arrest was "an offense for which police could not expect to find evidence in the passenger of compartment of [his] car.").

In *Knowles v. Iowa*, 525 U.S. 113, 118 (1998), the Supreme Court suppressed evidence of narcotics found during the search of a driver's vehicle subsequent to his arrest for speeding, finding the search of the vehicle could not be upheld as a search incident to arrest. The Court explained that once the officer issued the traffic citation, "all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car." *Knowles*, 535 U.S. at 118. The Court expressly rejected the state's argument that "a 'search incident to citation' is justified because a suspect who is subject to a routine traffic stop may attempt to hide or destroy evidence related to his identity

5

(e.g., a driver's license or vehicle registration), or destroy evidence of another, as yet undetected crime." *Id.*

Although *Gant* and *Knowles* involved the search of a vehicle incident to an arrest for a traffic violation, the language and reasoning in both suggest the holdings apply in equal force to the permanent seizure of items taken directly from the body of an arrestee. Indeed, in the passage from *Knowles* quoted above, the Court noted that evidence of speeding was not likely to be found "on the person of the offender." *Id.* Logically, then, the personal effects, like a cell phone, found in the pockets of someone arrested for speeding cannot be seized and submitted to evidence. The search incident to arrest exception does not permit the police to seize all items taken from an arrestee and hold onto them as evidence absent a connection "between the item to be seized and the criminal behavior." *Warden v. Hayden*, 387 U.S. 294, 307 (1967).

The seizure of the cell phones from Mr. Rivers does not fall under the justifications offered in *Chimel* for permitting a search incident to arrest: officer safety and preservation of evidence. First, the cell phones did not present any risk of harm to the arresting officers. As the Supreme Court stated in *Riley v. California*, "[l]aw enforcement officers remain free to examine the physical aspects of a phone to ensure that it will not be used as weapon—say, to determine whether there is a razor blade hidden between the phone and its case. Once an officer has secured a phone and eliminated any potential threats, however, data on the phone can endanger no one." 134 S. Ct. at 2485 (indicating that the search ceases to be lawful if it continues beyond its initial purpose).

Second, officers could not reasonably have seized the cell phones from Mr. Rivers to preserve evidence because, as in *Knowles*, the phones did not offer any evidence of the offenses on which the arrest was based—traffic offenses. Courts have upheld the seizure of cell phones incident to arrest for offenses in which cell phones might contain evidence of the offense of arrest, such as child

pornography, *e.g.*, *United States v. Lieu*, 2018 WL 784057 (D.D.C. Feb. 8, 2018) (upholding seizure of defendant's cell phone recovered during search incident to arrest for distribution of child pornography where the phone contained evidence relating to the offense), or drug distribution, *e.g.*, *United States v. Finley*, 477 F.3d 250 (5th Cir. 2007) (upholding seizure of defendant's cell phone recovered during search incident to arrest for possession with intent to distribute narcotics where officers reasonably believed the cell phone contained evidence of defendant's distribution activities). But in contrast to those cases, in this one the police could not have reasonably believed that the cell phones had evidence of Mr. Rivers' failure to wear a seatbelt or operation of his vehicle with a suspended license or even his fleeing from police on foot.

Officer safety did not justify the seizure of the cell phones. And, as in *Knowles*, the police could not reasonably believe that evidence of the traffic violations that served as their basis for arresting Mr. Rivers could be found on the cell phones. Accordingly, *Knowles* dictates that the police could not seize the cell phones as evidence incident to Mr. Rivers' arrest. Accordingly, the seizure of the phones as evidence violated Mr. Rivers' Fourth Amendment rights.

## II. Evidence Unlawfully Seized on August 29, 2017, and Any Evidence Derived Therefrom, Cannot Be Used at Sentencing in This Case.

The exclusionary rule would certainly prohibit the Government from introducing illegally seized evidence at trial. The Court should also prevent the Government from introducing at sentencing in this case any evidence obtained from the illegal seizure of the cell phones from Mr. Rivers on August 29, 2017. At sentencing, the Court has broad discretion to consider any information it deems relevant for sentencing purposes, including a consideration of "reliable but illegally obtained evidence." *United States v. Nichols*, 438 F.3d 437, 440 (4th Cir. 2006) (citing *United States v. Lee*, 540 F.2d 1205, 1207 (4th Cir. 1976)). However, the Court can, in its discretion, find exclusion is appropriate at

sentencing as a means of deterring police misconduct—the reason behind the exclusionary rule more generally.

In *Lee* the Fourth Circuit instructed that illegally obtained evidence must be excluded at sentencing when the degree of deterrence promoted by exclusion outweighs the limitation imposed on the sentencing judge to consider all relevant facts when imposing a sentence. 540 F.2d at 1211 (citations omitted) (considering evidence of defendant's prior conviction during sentencing even though the prior conviction, based on illegally obtained evidence, was subsequently reversed). *See also Nichols*, 438 F.3d at 441 ("[T]he deterrent effect of the exclusionary rule [must] outweigh the detrimental effects of excluding reliable evidence on the court's ability to meet its goal of proper sentencing.").

Furthermore, the Fourth Circuit recognized in *Lee* circumstances that would require exclusion from use at sentencing. The Court noted in *Lee* that if it were "presented with a case where it appeared that the government had illegally seized additional evidence with a view toward enhancing the defendant's sentence," such evidence would necessarily be excluded from consideration at sentencing. *Lee*, 540 F.2d at 1212. In so holding, the Court cited approvingly to *Verdugo v. United States*, 402 F.2d 599, 613 (9th Cir. 1968). In that case, the Ninth Circuit remanded for re-sentencing without use of tainted evidence, holding that "where, as here, the use of illegally seized evidence at sentencing would provide a substantial incentive for unconstitutional searches and seizures, that evidence should be disregarded by the sentencing judge." *Verdugo*, 402 F.2d at 613.

This Court should not consider at sentencing the cell phones seized from Mr. Rivers on August 29, 2017, or any evidence derived from those cell phones, because suppression at sentencing is the only mechanism by which to deter the unlawful police conduct in this case. It appears that whatever evidence the WCSO has developed falls below the probable cause necessary to indict. Thus,

exclusion at trial is not an available remedy. To permit use of the phones at sentencing would incentivize police to go beyond the permissible scope of a search incident to arrest and seize items that, though unlikely to provide evidence of the offense of arrest or sufficient evidence to support additional charges, may reveal compromising information that can be utilized at sentencing on other, unrelated charges.

The arguments against excluding evidence at sentencing raised in *Lee* and *Nichols* do not apply here. In *Lee* the Fourth Circuit reasoned that excluding evidence from trial would provide such a strong deterrent that excluding evidence from sentencing would have a marginal deterrent effect.[2] *Lee*, 540 F.2d at 1211 (affirming the lower court's consideration of a defendant's prior conviction, based on illegally seized evidence and subsequently reversed, at sentencing). Similarly, in *Nichols*, the Court concluded "the exclusion of evidence [illegally obtained] from the government's case-in-chief at trial [would] provide ample deterrence against police misconduct." 438 F.3d at 443 (reiterating the minimal deterrent effect of excluding tainted evidence at sentencing and permitting consideration of statements obtained in violation of *Miranda*).

Unlike in *Lee* and *Nichols*, in this case, Mr. Rivers has not faced charges stemming from the seizure of the cell phones, thus exclusion from trial is not an available remedy. Unlike the situation in *Lee* and *Nichols* in which the courts could rely on application of the exclusionary rule at trial to produce a deterrent effect, this Court has but one opportunity to do so: application of the exclusionary rule at

---

[2] The Court further explained: "Generally, law enforcement officers conduct searches and seize evidence for purposes of prosecution and conviction not for the purpose of increasing a sentence in a prosecution already pending or one not yet begun. If they are to be deterred from official lawlessness, it would seem obvious that the only effective deterrence is the threat that the prosecution arising out of the specific search and seizure in which they acted illegally would be rendered ineffective. The additional threat that a future sentence might be less severe because they acted unlawfully can be predicted to have little practical effect to accomplish its main objective." *Lee*, 540 F.2d at 1211.

sentencing. Because the Government solely intends to introduce the evidence obtained in violation of the Fourth Amendment at Mr. Rivers' sentencing, allowing consideration of such evidence would have absolutely no deterrent effect and would essentially reward the police for unconstitutional conduct. In the words of the Ninth Circuit, "where, as here, the use of illegally seized evidence at sentencing would provide a substantial incentive for unconstitutional searches and seizures, that evidence should be disregarded by the sentencing judge." *Verdugo*, 402 F.2d at 613.

**WHEREFORE**, Mr. Rivers requests that this Court issue a ruling that the Government cannot introduce at sentencing (or even make passing reference to at sentencing) the cell phones seized from Mr. Rivers on August 29, 2017, or any evidence derived from those cell phones.

Respectfully submitted,

JAMES WYDA
Federal Public Defender for the District of Maryland

_____/s/_____
KATHERINE TANG NEWBERGER (#27803)
Senior Litigation Counsel
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland  21201
Phone: (410) 962-3962
Fax:  (410) 962-0872
Email:  katherine_newberger@fd.org

**REQUEST FOR HEARING**

Pursuant to Rule 105.6 of the Local Rules of the United States District Court for the District of Maryland, the Defendant requests a hearing on this motion.

                                          /s/
                                   KATHERINE TANG NEWBERGER (#27803)
                                   Senior Litigation Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

                                          /s/
                                   Katherine Tang Newberger, #27803
                                   Senior Litigation Counsel